UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN DANA LONG, | Case No.:  22CV1838-W(BLM) |
| Plaintiff, | **REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MERITS BRIEF AND AFFIRMING THE DECISION OF THE COMMISSIONER** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **[ECF NOs. 14]** |

Plaintiff Alan Dana Long brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his application for Social Security Disability and Supplemental Security Income disability benefits for lack of disability.  ECF No. 1.  Before the Court are Plaintiff's Brief on the Mertis [ECF No. 14-1 ("Mot.")], Defendant's response [ECF No. 16 ("Oppo."), and Plaintiff's reply [ECF No. 18 ("Reply")].

This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Merits Brief be **DENEID**, and the decision of the Commissioner affirmed.

**PROCEDURAL BACKGROUND**

On June 10, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on June 10, 2020.  See Administrative Record ("AR") at 17.  The claims were denied initially on March 11, 2021, and upon reconsideration on December 2, 2021, resulting in Plaintiff's request for an administrative hearing on January 7, 2022.  Id.

On June 14, 2022, a telephonic hearing was held before Administrative Law Judge ("ALJ") Andrew Verne.   Id. at 17, 31.  Plaintiff, Plaintiff's counsel, Mr. David M. Shore, and an impartial vocational expert ("VE"), Linda M. Ferra, testified at the hearing.  Id. at 17.  In a written decision dated July 7, 2022, ALJ Verne determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since June 10, 2020.  Id. at 31.  Plaintiff requested review by the Appeals Council.  Id. at 1.  In a letter dated November 21, 2022, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-3.

On November 22, 2022, Plaintiff filed the instant action seeking judicial review by the federal district court.  ECF No. 1.  On April 17, 2023, Plaintiff filed a Brief on the Merits alleging that the ALJ failed to 1) address post-traumatic stress disorder as required by 20 C.F.R. 1520(A), Social Security Ruling ("SSR") 85-15, and 85-16, 2) address the combination of mental and physical limitations in the RFC, 3) establish that Plaintiff can perform his past relevant work ("PRW") as generally performed, and 4) provide clear and convincing reasons to discount Plaintiff's statements.  Mot. at 10-19.  Defendant filed a timely response asserting that the "ALJ reasonably declined to find any mental impairments at step two[,]" "the ALJ was not required to consider Plaintiff's combination of impairments in assessing the RFC[,]" "[t]he ALJ's finding that Plaintiff can perform his past relevant work is supported by substantial evidence[,]" and "[t]he ALJ properly considered Plaintiff's subjective statements."   Oppo. at 2-9.  On May 22, 2023, Plaintiff filed a Reply.  Reply.

///

///

22CV1838-W(BLM)

## ALJ's DECISION

On July 7, 2022, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 31.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since June 10, 2020).  Id. at 20.  At step two, he considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease of the lumbar spine; cervicalgia; bilateral knee arthralgia; bilateral shoulder impairment. (20 CFR 404.1520(c))."  Id.  He considered Plaintiff's mental impairments but found they "do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore nonsevere."  Id. at 21.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  Id. at 21.  At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him to

> lift or carry 20 pounds occasionally and 10 pounds frequently; sit for 20-30 minutes at a time and up to 3 hours total in an 8-hour workday; stand or walk for 6 hours total in an 8-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch; occasionally crawl; can occasionally reach overhead bilaterally.

Id. at 22.  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. at 23.  The ALJ further determined that Plaintiff is capable of performing past relevant work as a medical service technician and a medical record technician.  Id. at 30.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial

22CV1838-W(BLM)

review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), superseded by regulation on other grounds.  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.  Id.  See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter

to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues that the ALJ failed to 1) address post-traumatic stress disorder as required by 20 C.F.R. 1520(A), SSR 85-15, and 85-16, 2) address the combination of mental and physical limitations in the RFC, 3) establish that Plaintiff can perform his past relevant work ("PRW") as generally performed, and 4) provide clear and convincing reasons to disregard Plaintiff's statements.  Mot. at 10-19.

Defendant contends that the "ALJ reasonably declined to find any mental impairments at step two[,]" "the ALJ was not required to consider Plaintiff's combination of impairments in assessing the RFC[,]" "[t]he ALJ's finding that Plaintiff can perform his past relevant work is supported by substantial evidence[,]" and "[t]he ALJ properly considered Plaintiff's subjective statements."  Oppo. at 2-9.

### A.   Step Two - Post Traumatic Stress Disorder

The ALJ found that Plaintiff suffers from the following severe impairments, "degenerative disc disease of the lumbar spine; cervicalgia; bilateral knee arthralgia; bilateral shoulder impairment. (20 CFR 404.1520(c))."  AR at 20.  The ALJ concluded that Plaintiff's "mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Plaintiff's ability to do basic work activities, they are nonsevere."  Id. at 21 (emphasis in original).

#### 1.   Legal Standard

At step two of the evaluation process, an ALJ must consider the medical severity of a plaintiff's impairments and if the ALJ finds that the plaintiff does not have a severe medically determinable impairment or combination of impairments satisfying the duration requirements, the ALJ will find that the plaintiff is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Social Security claimants bear the burden of establishing that they have a severe impairment with medical evidence.  20 C.F.R. § 404.1512.  Diagnosis of an impairment alone is not sufficient to make that impairment severe.  See Susan C. v. Berryhill, 2019 WL 12831730, at *4 (C.D. Cal., May 28, 2019) ("mere diagnosis of an impairment—or even treatment for it—is insufficient to

5

establish severity at step two") (citing <u>Febach v. Colvin</u>, 580 F. App'x 530, 531 (9th Cir. 2014) ("Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a 'severe' impairment[.] ... There was sufficient evidence ... for the ALJ to conclude that [his] depression is not 'severe,' including reports by at least three of [his] physicians suggesting that his impairment is 'non-severe.'")).  To qualify as severe, an impairment must significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1522(a). "When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point 'to a host of diagnoses scattered throughout the medical record.' Rather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis."  <u>Geoffrey William H. v. Comm'r of Soc. Sec.</u>, 2020 WL 1918098, at *8 (E.D. Wash., Feb. 24, 2020) (quoting <u>Cindy F. v. Berryhill</u>, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019)).

2.     <u>Analysis</u>

Plaintiff argues that the ALJ failed to address Plaintiff's post-traumatic stress disorder ("PTSD"), inappropriately cherry-picked evidence from the record to support his finding that Plaintiff's mental impairments were non severe, and failed to use any medical evidence in support of his finding.  Mot. at 10-12.  Defendant contends that the "ALJ reasonably declined to find any mental impairments at step two."  Oppo. at 2-3.  Plaintiff replies that the ALJ is required to address the conflict between the Veterans disability decision and his finding and argues that unremarkable status examinations findings are not sufficient to undermine the severity of Plaintiff's mental health impairments.  Reply at 5.  In his reply, Plaintiff identifies functional mental limitations that he believes the ALJ failed to consider, such as an inability to focus or concentrate due to auditory hallucinations, an inability to control his reactions to noises, and his reactive nature.  <u>Id.</u> at 5.

Even if the ALJ erred by failing to include the severe impairment of PTSD, the failure is harmless.   The Ninth Circuit has held that an ALJ's failure to identify additional severe impairments is harmless when the "ALJ resolves step two in a claimant's favor – i.e., finding that a severe impairment exists."  <u>Christofferson v. Comm'r of Soc. Sec.</u>, 2020 WL 5848342, *4 (D.

Idaho, Sept. 30, 2020) (citing Pouppirt v. Comm'r of Soc. Sec., 609 Fed. Appx. 440, 441 (9th Cir. 2015) and Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)).  This is especially true if the ALJ considered the impairment later in the sequential process.  Id.  Here, the ALJ resolved step two in Plaintiff's favor by finding that several severe impairments exist.  AR at 20.  Additionally, the ALJ did consider Plaintiff's PTSD diagnosis in his analysis.  Id. at 20-21.  For example, prior to determining Plaintiff's RFC, the ALJ noted that in making his finding, he "considered all symptoms" and "medical opinion(s) and prior administrative medical finding(s)."  Id. at 22.  The ALJ considered that Plaintiff "has alleged disability due to PTSD, depression, anxiety."  Id.  The ALJ also noted Plaintiff's testimony regarding his monthly appointments with his psychiatrist and his weekly appointments with his therapist.  Id. at 20.  The ALJ considered Plaintiff's VA medical records discussing his mental health diagnoses and treatment.  Id.  Specifically, the ALJ noted Plaintiff's complaints of depression, anxiety, and memory and cognition problems as well as Plaintiff's diagnoses of major depression and PTSD.  Id. (citing Exhs. 10F at 7-9 and 14F at 24).  The ALJ recognized Plaintiff's treatment with psychotherapy and medication management, but also noted that Plaintiff's mental status exams were "unremarkable with grossly normal attention, concentration, and memory" and that his mental health status was overall stable and there was no need for inpatient hospitalization or goal-oriented psychotherapy.  Id. at 20-21.  The ALJ found that Plaintiff's panic disorder and PTSD did not cause more than minimal limitation in Plaintiff's "ability to perform basic mental work activities" singly or in combination.  Id. at 21.

The ALJ supported his conclusion by considering the four functional areas of mental functioning known as the paragraph B criteria.  Id.  To satisfy paragraph B criteria, a claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the following four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  Listing 12.00(A)(2)(b).  The ALJ found that Plaintiff was mildly limited in all four areas and referenced Plaintiff's "VA records that do not document more than 'mild' limits in each domain as reflected by stability of mental health symptoms with very conservative mental

health treatment."  AR at 21.

Plaintiff does not cite to any specific medical records or evidence that the ALJ overlooked in his brief but cites to L.L. v. Kijakazi, 2022 WL 2833972 (N.D. Cal. July 20, 2022) in support of his position that the ALJ has inappropriately cherry-picked evidence to support his finding.  Mot. at 11.  The instant matter is distinguishable from L.L.  In L.L., the ALJ cited plaintiff's normal mental status exams where she was noted as being alert and oriented and cooperative with goal directed thought processes, and normal thought content and judgment.  2022 WL 2833972 at *11.  However, the court reviewed the ALJ's findings and found that he "cherry-picked" evidence to determine that the treating providers' opinions were inconsistent with [plaintiff's] 'generally unremarkable mental status examinations'" and "isolated evidence of unremarkable mental status and demeanor, and in some instances misstated that evidence, within records that, overall, indicate significant deviations from normal."  Id.  The court noted that plaintiff's cited medical records showed normal mental status examinations and demeanor but also showed significant deviations from normal.  Id.  For example, while plaintiff was often noted as being cooperative, alert, and oriented, and having goal directed thought processes, in the same appointment it was noted that (1) her "memory was 'not grossly intact,' that she 'endorsed current auditory hallucinations and illusions,' that she is 'unable to relate in an adequate manner,' and that she had moderate impairment in a range of work-related abilities, including the ability to 'maintain attention and concentration for the duration of the evaluation[,]'" (2) plaintiff "'goes multiple days on end without eating, has panic attacks approximately once a week ... reports thoughts of self-harm,' and often does not 'get out of her bed or eat for 24–48 hours[,]'" (3) "L.L. had some suicidal thoughts, her mood was depressed and anxious, her judgment was limited, her memory and attention were severely impaired, and that her general cognitive ability was in the extremely low range[,]" and (4) "her affect was sad, anxious, irritable, and angry; her behavior was agitated and restless; her speech was loud and excessive; her attention and concentration were poor; and her mood was sad, anxious, irritable, and angry."  Id.  The ALJ in L.L. also cited mental status observations from appointments unrelated to the plaintiff's mental health.  Id. at *12.  Here, however, Plaintiff's records do not indicate that the ALJ

22CV1838-W(BLM)

"cherry-picked through the evidence to support non severe finding of [Plaintiff's] mental impairment." Mot. at 12. The records the ALJ cites when noting Plaintiff's mostly unremarkable mental status examinations include the following information:

- March 4, 2020 appointment with Dr. Jonathan Richardson – Plaintiff was diagnosed with PTSD on active duty following his deployment to Iraq in 2006. He has major depression with psychotic features. He works full-time at the Naval Hospital Camp Pendleton. Feeling more depressed, anxious, and keyed up. Getting out of bed has been a chore, he is experiencing problems sleeping, and feels like he can no longer work. Plaintiff reports hypervigilance, hyper arousal, anger, irritation, and rage. There was no suicidal ideation, no overt psychotic symptoms, no homicidal ideations, no criteria for involuntary hospitalization and a low risk of harm to self or others. AR at 21 (citing Exh. 1F at 48), 383-392.

- July 1, 2020 appointment with Dr. Jonathan Richardson – Plaintiff's diagnoses included PTSD, MDD, Panic Disorder, and Alcohol Use Disorder and found moderate overall risk in the long run due to depressive symptoms and anxiety. Plaintiff was stressed but it was his first day of retirement and some of the stress was related to the COVID situation at work. Plaintiff was experiencing vivid nightmares, but his sleep was improving, and he continued biking with the goal of participating in one race per month. There was some concern regarding Plaintiff's mood, but his mood improved with retirement. There was no suicidal ideation, no overt psychotic symptoms, no homicidal ideations, no criteria for involuntary hospitalization and a low risk of harm to self or others. AR at 21 (citing Exh. 1F at 28, 6F at 102), 362-366, 654-658.

- October 15, 2020 appointment with Dr. Jonathan Richardson – Plaintiff's diagnoses included PTSD, MDD, Panic Disorder, and Alcohol Use Disorder and found moderate overall risk in the long run due to depressive symptoms and anxiety. Plaintiff's mood decreased after missing his medication, but he was feeling better after resuming the medication and had no regrets about retiring, was continuing

22CV1838-W(BLM)

to ride his bike, was tolerating his medications, sleeping better, invested in therapy, and future oriented.  There was no suicidal ideation, no overt psychotic symptoms, no homicidal ideations, no criteria for involuntary hospitalization and a low risk of harm to self or others.  AR at 21 (citing Exh. 6F at 82), 634-640.

- January 19, 2021 appointment with Dr. Jonathan Richardson – Plaintiff's diagnoses included PTSD, MDD, Panic Disorder, and Alcohol Use Disorder and found moderate overall risk in the long run due to depressive symptoms and anxiety, but noted Plaintiff was enjoying his retirement, investing in the stock market, doing well, biking, tolerating his medications, sleeping better, exercising, invested in therapy, and future oriented.  There was no suicidal ideation, no overt psychotic symptoms, no homicidal ideations, no criteria for involuntary hospitalization and a low risk of harm to self or others. AR at 21 (citing Exh. 3F at 9, 6F at 58), 487-491, 610-616.

- April 8, 2021 appointment with Dr. Jonathan Richardson – Same as January 19, 2021 appointment.  AR at 21 (citing Exh. 6F at 45), 597-603.

- December 15, 2021 appointment with Dr. Jonathan Richardson – Plaintiff reported that retirement was going okay and that he was continuing to bike and exercise but noted stress and frustration stemming from his marriage.  Discussing the issue made Plaintiff feel better.  There was no suicidal ideation, no overt psychotic symptoms, no homicidal ideations, no criteria for involuntary hospitalization and a low risk of harm to self or others.  AR at 20 (citing Exh. 10F at 9), 741-744.

- April 5, 2022 Eligibility Determination – Plaintiff was discharged from Program of Comprehensive Assistance for Family Caregivers ("PCAFC") after reassessment because Plaintiff was found to be "relatively independent with his activities of daily living (ADLs). He is noted in the records as enjoying putting, riding a stationary bike at home, and driving alone.  Furthermore, the medical records indicated that his mental health status is stable overall.  [Plaintiff] has not required inpatient psychiatric medication management for PTSD/depression.  His record was negative

22CV1838-W(BLM)

1         for psychosis, elevated risk, or a substantiated neurocognitive disorder.  [Plaintiff]

2         is noted to be independent in self-preservation, can identify his own needs, and

3         can arrange for his own health and safety."  AR at 21 (citing Exh. 13F at 49), 1036,

4         897-902.

5       There are other medical records that do not describe unremarkable examinations.   During

6 Plaintiff's February 24, 2022 interview for his application to the Program of Comprehensive

7 Assistance for Family Caregiver, Plaintiff stated that he does not drive very far because he

8 sometimes gets lost.  AR at 926-934.  His wife also reported that (1) Plaintiff's mental health

9 symptoms are increasing, (2) they cannot go out as much due to Plaintiff's aggression, and (3)

10 Plaintiff is easily annoyed, does not help with household chores, gets extreme road rage, and

11 forgets where he is when he drives and rides his bike.  Id.

12       On March 3, 2022, the notes from Plaintiff's PCAFC reassessment stated that he (1) is at

13 risk for self-neglect, (2) always needs to be with a caregiver when away from home to help with

14 remembering, decision making, and judgment, (3) can be left alone at home for an hour or two,

15 (4) experiences auditory hallucinations, but requires no intervention, (5) has a tendency to

16 become suddenly upset or violent and is easily agitated and frustrated, (6) has a propensity for

17 sudden decisions or actions, explosive moods, easily triggered, (7) may have difficulty

18 responding to a changing environment or hazard in a public place due to PTSD, (8) is easily

19 distracted, (9) relies on his caregiver for daily structure and routine, (10) has an easier time

20 tolerating auditory hallucinations since he retired, (11) flails when sleeping due to nightmares

21 that results in falling out of the bed and kicking holes in the closet door, and (12) gets lost when

22 driving or riding his bike.  AR at 912-924.

23       While there are records describing mental health challenges that Plaintiff faced, there are

24 also numerous records from mental health providers showing unremarkable mental status

25 exams and low risk as cited to by the ALJ.  Where the evidence can reasonably be construed to

26 support more than one rational interpretation, the court must uphold the ALJ's

27 decision. See Ahearn, 988 F.3d at 1115-1116 (citing Mayes, 276 F.3d at 459).  This includes

28 deferring to the ALJ's credibility determinations and resolutions of evidentiary

conflicts.  Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews, 53 F.3d at 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).  Here, the unremarkable mental status exams and April 5, 2022, PCAFC eligibility determination finding Plaintiff's mental health status to be stable overall are substantial evidence in support of the ALJ's finding that Plaintiff's panic disorder and PTSD when considered singly and in combination are not severe.  Moreover, since the ALJ resolved Step Two in Plaintiff's favor by finding the existence of several severe impairments and later considered all of Plaintiff impairments in his analysis, the Court finds that even if the ALJ erred in his Step Two determination, the error was harmless.  See Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (finding that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand.") (citing Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)); see also Cindy F. v. Berryhill, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019) ("the ALJ considered all of Plaintiff's impairments at the subsequent steps of the sequential analysis and in his summary of the medical evidence. Thus, even assuming the ALJ erred at step two, that error would have been harmless").

Plaintiff also argues that the ALJ had "a duty to address the conflict between the Veterans disability decision and his finding" and that his failure to do so means that his decision is not supported by substantial evidence.  Reply at 5.  In 2006, Plaintiff was diagnosed with PTSD while on active duty following his deployment to Iraq. AR at 410.  Plaintiff's most recent records show that he has a 100% service-connected disability broken down as follows: PTSD (70%), Sleep Apnea Syndromes (50%), Degenerative Arthritis of the Spine (20%), Hypersensitive Vascular Disease (20%), Bursitis (10%), Tendon Inflammation (10%), Tinnitus (10%), Arthritis, Degenerative (10%), Tendon Inflammation (10%), Arthritis, Degenerative (10%), Hemorrhoids (0%), Infections of the Skin (0%), Deformity of the Penis (0%), Scars (0%), and Tendon Inflammation (0%). Id. at 346.

20 C.F.R. § 404.1504 provides that for claims filed after March 27, 2017, ALJs "will not

provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits. However, [they] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [they] receive as evidence in [a] claim in accordance with § 404.1513(a)(1) through (4)." Here, that ALJ did not directly address the VA's disability determination for Plaintiff or provide any analysis regarding that determination. Id. at 17-31. However, in accordance with 20 C.F.R. § 404.1504, the ALJ referenced Plaintiff's VA records throughout his opinion and clearly considered the records in making his finding. Id. This was all that was required of the ALJ. See Connie P. v. Kijakazi, 2023 WL 4269765, at *6 (N.D. Cal., June 29, 2023) ("[w]hile an ALJ must *consider* the evidence from these other agencies, [] section 404.1504 also clarifies that it is no longer necessary for the ALJ to provide any *analysis* about a disability decision from these agencies. The requirement, articulated in McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002), that great weight be afforded to a VA's disability determination has been superseded by these revised regulations.").

Because Plaintiff has not established that he has a severe mental impairment, there is substantial evidence supporting that ALJ's decision that Plaintiff's mental impairments were not severe, and the ALJ resolved Step Two in favor of Plaintiff and properly addressed Plaintiff's VA records and disability determination, the Court **RECOMMENDS** that Plaintiff's merits brief on this issue be **DENIED**.

**B.    RFC Limitations – Mental**

Plaintiff argues that the ALJ failed to address the combination of his mental and physical limitations in the RFC. Mot. at 13. Plaintiff notes that the RFC does not contain any limitations accounting for mental impairments despite Plaintiff being diagnosed as 100% disabled by various doctors. Id. Plaintiff argues that this leaves the ALJ's RFC insufficient and that the ALJ's findings are not supported by substantial evidence. Id.

Defendant contends that the ALJ was not required to consider Plaintiff's combination of impairments when assessing the RFC and that Plaintiff improperly attempts to combine the

requirements of steps two and three of the analysis with the RFC analysis.  Oppo. at 3-4. Defendant notes that because the ALJ found that Plaintiff's mental impairments only minimally affected Plaintiff's ability to function, the ALJ did not need to include any impairments due to mental health limitations in the RFC finding.  Id.

"While mild mental impairment limitations need not be reflected in the RFC, it is insufficient for an ALJ to make a 'vague and conclusory assertion at step two that [the ALJ's] subsequent RFC analysis reflects the degree of limitation that [the ALJ] has found in the paragraph B mental function analysis.'"  Montano v. Comm'r of Soc. Sec. Admin, 2022 WL 1617306, at *3 (D. Ariz., May 23, 2022) (internal citations omitted) (citing  Slusher v. Comm'r of Soc. Sec. Admin., 2022 WL 596801, at *5 (D. Ariz. Feb. 28, 2022) and quoting Michele M. v. Saul, 2020 WL 1450442, at *7 (S.D. Cal. Mar. 25, 2020) (stating an ALJ must give some indication that she considered the limiting effects of a non-severe mental impairment in the RFC)).  Similarly, while "*consideration* of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work," the court may find error where it is unclear from ALJ's opinion if "the ALJ considered Plaintiff's non-severe mental impairments and any corresponding limitations before assigning Plaintiff an RFC without any mental restrictions." Michele M., 2020 WL 1450442, at *7 (emphasis in original) (quoting Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016)).

Here, it is clear that the ALJ considered the limiting effects of Plaintiff's mental health impairments in his RFC determination.  In addition to including the boilerplate language distinguishing between the Step Two analysis and the RFC assessment[1], and stating that he has considered all symptoms and the extent to which these symptoms can reasonably be accepted

---

[1] "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.  The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis."   AR at 21-22.

22CV1838-W(BLM)

as consistent with the objective medical evidence and other evidence," the ALJ specifically acknowledged Plaintiff's allegations of disability due to PTSD, depression, and anxiety.  Id. at 22.  He also considered and discussed Plaintiff's Adult Function Report in which Plaintiff describes his level of functioning and Plaintiff's VA records related to his discharge from the PCAFC due to his independent capabilities.  Id. at 26.  The ALJ also specifically noted that there was no evidence of sleep deprivation or cognitive deficits due to pain or depression.  Id.

Finally, the ALJ addressed the findings of Robert Liss, PhD who reviewed Plaintiffs records on July 13, 2021 [id. at 27 (citing Exh. 4A)] and concluded that Plaintiff did not have a severe impairment and of Dr. H. Amado, who reviewed Plaintiff's medical records on October 6, 2020, completed a Psychiatric Review Technique, completed a Mental Residual Functional Capacity Assessment, and determined that Plaintiff was mildly limited in his ability to understand, remember, or apply information and interact with others and moderately limited in his ability to concentrate, persist, or maintain pace, and adapt or manage oneself.  Id. at 82-84.  Dr. H. Amado also found that "[o]verall [Plaintiff] appears capable of unskilled work."  Id. at 83.  In the mental RFC, Dr. Amado found that Plaintiff had understanding and memory limitations but was not significantly limited in his ability to (1) remember locations and work like procedures, (2) understand and remember very short and simple instructions, (3) understand and remember detailed instructions, (4) carry out very short and simple instructions, (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (6) sustain an ordinary routine with special supervision, (7) make simple work-related decisions, (8) interact appropriately with the general public, (9) ask simple questions or request assistance, (10) accept instructions and respond appropriately to criticism from supervisors, (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (12) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (13) be aware of normal hazards and take appropriate precautions, and (14) set realistic goals or make plans independently of others.  Id. at 88-92.  He found that Plaintiff was moderately limited in his ability to (1) carry out detailed instructions, (2)  maintain attention, and concentration for extended periods, (3) work in coordination with or in proximity to others

22CV1838-W(BLM)

without being distracted by them, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (5) to respond to changes in the work setting, and (6) travel in unfamiliar places or use public transportation. Id. On March 8, 2021, Dr. Amado reviewed the record again and concluded that Plaintiff was mildly limited in his ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. Id. at 111-113. Dr. Amado found that Plaintiff did not appear to have a twelve-month severe mental impairment. Id. at 113. As such, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff's mental impairments were mild and did not need to be included in the RFC.

Because limitations due to mild mental impairments are not required to be in the RFC and because the ALJ considered Plaintiff's non-severe mental impairments and any limiting effects due to those impairments, the Court **RECOMMENDS** that Plaintiff's merits brief on this issue be **DENIED**.

### C.   Past Relevant Work

Plaintiff argues that the ALJ failed to demonstrate that Plaintiff can perform his PRW as generally performed. Mot. at 14. Plaintiff argues that his PRW as generally performed exceeds the RFC found by the ALJ which limits Plaintiff to sitting for 20-30 minutes a time for up to three hours total and to occasionally reaching overhead bilaterally. Id. Plaintiff further argues that the ALJ describes his PRW as a composite job that is inconsistent with the PRW as generally performed. Id. at 16-17.

Defendant contends that Plaintiff has waived any argument regarding composite jobs because he failed to raise the issue at the administrative level. Oppo. at 7-8.

Plaintiff replies that any failure to object did not relieve the ALJ of his duty of being clear and transparent and providing a reasonable explanation for conflicts in the record. Reply at 7. Because there is a discrepancy between the RFC and the PRW finding, the ALJ is required to resolve it. Id.

///

22CV1838-W(BLM)

1.   Plaintiff's Past Relevant Work as Generally Performed

Plaintiff's RFC states that he can

> lift or carry 20 pounds occasionally and 10 pounds frequently; sit for 20-30 minutes at a time and up to 3 hours total in an 8-hour workday; stand or walk for 6 hours total in an 8-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch; occasionally crawl; can occasionally reach overhead bilaterally.

AR at 22.  The ALJ identified Plaintiff's PRW as Medical Service Technician, DOT No. 079.367-018 and Medical Record Technician, DOT No. 079.362-014.   Medical Service Technician is described as

> Administers medical aid to personnel aboard submarines, small ships, and isolated areas in absence of or under supervision of medical superior: Examines patients and diagnoses condition. Prescribes medication to treat condition of patient. Inoculates and vaccinates patients to immunize patients from communicable diseases. Treats cuts and burns, performs minor surgery and administers emergency medical care to patients during emergency situations in absence of superior. Inspects food and facilities to determine conformance to sanitary regulations. Recommends necessary measures to ensure sanitary conditions are maintained. Records, transcribes, and files medical case histories. Prepares requisitions for supplies, services, and equipment.  GOE: 07.05.03 STRENGTH: L GED: R4 M3 L3 SVP: 7 DLU: 77.

Id. at 31; see also https://occupationalinfo.org/07/079367018.html.  Medical Record Technician is described as

> Compiles and maintains medical records of patients of health care delivery system to document patient condition and treatment: Reviews medical records for completeness and to abstract and code clinical data, such as diseases, operations, procedures and therapies, using standard classification systems. Compiles medical care and census data for statistical reports on types of diseases treated, surgery performed, and use of hospital beds, in response to inquiries from law firms, insurance companies, and government agencies. Maintains and utilizes variety of health record indexes and storage and retrieval systems. Operates computer to process, store, and retrieve health information. Assists MEDICAL-RECORD ADMINISTRATOR (medical ser.) 079.167-014 in special studies or research, as

22CV1838-W(BLM)

needed. GOE: 07.05.03 STRENGTH: L GED: R4 M3 L4 SVP: 6 DLU: 88.

Id. at 31; see also https://occupationalinfo.org/07/079362014.html.   During the hearing, the ALJ asked the VE if Plaintiff would be able to perform his PRW with a limitation of occasional overhead reaching with the upper extremities.  Id. at 66.  The VE responded "Correct. Now the DOT[2] does not address partial reaching.  However, based on my experience, those jobs would not require reaching overhead more than one-third of the time."[3]  Id. at 66-67. During the hearing both the ALJ and Plaintiff's counsel asked the VE if Plaintiff would be capable of doing his PRW if Plaintiff was limited to sitting for twenty to thirty minutes at a time before needing to be able to change positions and could only sit for two to three hours per day.  Id. at 65-66.  The VE responded yes.  Id. at 66.

Where there is a conflict between the VE's finding that a plaintiff can work and the requirements of the DOT, the ALJ must ask the VE to reconcile the conflict before relying on the expert to find the plaintiff disabled.  See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016)).  However, this obligation only occurs where the conflict is obvious or apparent.  Id.  In Gutierrez, the VE testified that the plaintiff could work as a cashier, a job that required frequent reaching despite the fact that the plaintiff could not reach above her shoulder on the right side.  844 F.3d at 807.  The plaintiff argued that the ALJ erred by not recognizing the conflict between the VE's testimony and the DOT, but the Ninth Circuit held that there was no error because there was no "apparent or obvious conflict" and common experience shows that it is "unlikely and unforeseeable" that a cashier would need to reach overhead.  Id.  Here, based on the DOT descriptions and common experience, there is no "apparent or obvious conflict" and it is likely and foreseeable that a

---

[2] DOT stands for Dictionary of Occupational Titles.

[3] "Occasionally means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2 (S.S.A. 1983) SSR 83-10.

1   Medical Service Technician and Medical Record Technician with overhead reaching limitations
2   could perform his duties.  Accordingly, the ALJ did not err by failing to ask the VE to reconcile
3   the conflict between overhead reaching limitations and Plaintiff's PRW.

4        With respect to Plaintiff's sitting limitations, there also does not appear to be an obvious
5   and apparent conflict that required the ALJ to reconcile Plaintiff's limitations with Plaintiff's PRW.
6   According to the DOT, a Medical Service Technician spends some portion of their day moving
7   about and engaging in activities that do not require sitting.  While a Medical Service Technician
8   may sit to record, transcribe, or file medical histories or to prepare requisition forms, a Medical
9   Service Technician is also standing and moving around to administer medical aid, examine
10  patients, give injections, and inspect facilities.  Given this range in responsibilities and activities,
11  it is not obvious and apparent that a Medical Service Technician would need to sit for more than
12  thirty minutes at a time or for more than three hours in a workday.  In addition, when Plaintiff
13  completed his Work History Report, he wrote "3" next to the question "how many total hours
14  each day did you sit?"  Id. at 275.  Given the lack of obviousness surrounding any conflict
15  between Plaintiff's RFC sitting limitations and Plaintiff's PRW as a Medical Service Technician,
16  the ALJ did not err by failing to ask the VE to reconcile the conflict.

17       Finally, Plaintiff's PRW as a Medical Record Technician also does not apparently and
18  obviously conflict with Plaintiff's limitations.  While Plaintiff did write that he spent six hours a
19  day sitting in his Work History Report, he also described what he did all day in the role as "box
20  up and retire medical records, make new medical records, audit patient records for the correct
21  documentation and educate nurses how to do correct documentation" and "[b]oxing up retired
22  medical records and carry them to a storage room and stack them on the sleeve [for] 4 to 6
23  hours a day."  Id. at 276.  The DOT describes the job as compiling, maintaining, and reviewing
24  medical records, maintaining and utilizing health record indexes, and operating a computer.
25  Some of these activities cannot be done while sitting down (carrying records to storage, stacking
26  boxes) and there is no obvious or apparent reason any of these activities require someone to sit
27  for more than twenty to thirty minutes at a time without shifting positions or for more than three
28  hours in a day.  Even if the ALJ erred by finding that Plaintiff could perform his PRW as a Medical

22CV1838-W(BLM)

Record Technician, the error is harmless.  Harmless error occurs if the error is inconsequential to the ultimate non-disability determination.  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Errors that do not affect the ultimate result are harmless.  See Parra, 481 F.3d at 747. An ALJ's error may be deemed harmless if, in light of the other reasons supporting the overall finding, it can be concluded that the error did not "affect[ ] the ALJ's conclusion."  Batson, 359 F.3d at 1197.  Because the ALJ properly found that Plaintiff could perform his PRW as a Medical Service Technician, any errors surrounding Plaintiff's PRW as a Medical Record Technician are harmless.

Because there were no apparent or obvious conflicts between Plaintiff's sitting and overhead reaching limitations and his PRW requiring reconciliation by the VE, the Court **RECOMMENDS** that Plaintiff's merits brief on this issue be **DENIED**.

### 2.   Composite Job

Plaintiff argues that the ALJ erred at step four when he described Plaintiff's job as a composite job and incorrectly evaluated the job as generally performed.[4]  Mot. at 17.  Defendant contends that Plaintiff has waived any arguments regarding a composite job.  Oppo. at 7-8. Plaintiff replies that the failure of his counsel to object during the administrative proceedings did not relieve the ALJ of his duty to address the conflicts in the vocational evidence.  Reply at 7. Plaintiff cites Lamear in support of his position.  Id. at 7.  While it is true that courts have found a lack of waiver due to an ALJ's affirmative duty, this is usually done in the context of a step five analysis instead of step four where the burden is on the plaintiff.[5]  See Magnotti v. Comm'r

---

[4] "At the fourth step, [the Social Security Administration] consider[s] our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."  20 C.F.R. § 404.1520.

[5] "At the fifth and last step, [the Social Security Administration] consider[s] our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled."  20 C.F.R. § 404.1520.

1  of Soc. Security Administration, 2021 WL 4025959, at *3 (D. Ariz., Sept. 3, 2021) ("Plaintiff is

2  correct that 'counsel's failure [to reconcile inconsistencies between VE testimony and the DOT]

3  does not relieve the ALJ of [her] express duty to reconcile apparent conflicts through

4  questioning.' Nevertheless, the Ninth Circuit and other courts finding a lack of waiver due to the

5  ALJ's affirmative duty have generally done so at step five, where the burden is on the

6  Commissioner, as opposed to step four, where the burden is still on the claimant.") (quoting

7  Lamear, 865 F.3d at 1206) (citing Guerrero v. Berryhill, 2017 WL 4174257, *2 (S.D. Cal. 2017)

8  ("[T]he review in Lamear centered on the ALJ's determination at step five of the sequential

9  evaluation process, at which point the burden shifts to the government. By contrast, Plaintiff

10  here objects to the finding at step four, where the burden still lay with Plaintiff to prove she was

11  disabled and unable to return to past relevant work. Plaintiff presents no argument or authority

12  that the Lamear holding applies to a step four analysis and, in fact, all of the authority cited in

13  Lamear addresses review of step five determinations.") and Lamear, 865 F.3d at 1204 (noting

14  that the "only step at issue on appeal" was step five).

15      Here Plaintiff does not argue that he raised the issue of his PRW being a composite job

16  at the administrative level.  Mot., Reply.  Because Plaintiff failed to raise this issue before the

17  ALJ and failed to question the VE about the issue when he had an opportunity to do so, Plaintiff

18  has waived his argument regarding his PRW as a composite job.  See Hurtado v. Berryhill, 749

19  F. App'x 663, 664 (9th Cir. 2019) ("Because Hurtado did not raise either issue [concerning

20  whether his past relevant work was a composite job and whether the ALJ violated Valencia],

21  present any evidence, or challenge the vocational expert's testimony at the administrative

22  hearing, those arguments are forfeited.").  Accordingly, the Court **RECOMMENDS** that Plaintiff's

23  brief be **DENIED** on this issue.

24      **D.**    **Subjective Symptom Testimony**

25      Plaintiff argues that the ALJ "fail[ed] to provide clear and convincing reasons to disregard

26  [Plaintiff's] statements."  Mot. at 17.  Specifically, Plaintiff alleges that the ALJ "put the cart

27  before the horse" when he improperly determined Plaintiff's RFC first then evaluated Plaintiff's

28  testimony in light of that RFC.  Id. at 18.  Plaintiff cites Laborin v. Berryhill, 867 F. 3d 1151, 1154

1 (9th Cir. 2017) in support of his position.  Id.

2      Defendant contends that the ALJ properly considered Plaintiff's subjective statements and

3 "reasonably concluded that the record did not adequately support Plaintiff's allegations of

4 disabling symptoms and limitations."  Oppo. at 8.  Specifically, the ALJ provided clear and

5 convincing reasons for rejecting Plaintiff's testimony that were supported by substantial evidence

6 when he explained that the objective medical evidence, Plaintiff's daily activities, and Plaintiff's

7 conservative treatment contradicted Plaintiff's testimony.  Id. at 9.

8      Plaintiff replies that the ALJ failed to explain why Plaintiff's statements were not

9 persuasive.  Reply at 7.  Plaintiff notes that Plaintiff's statements are consistent with the medical

10 record and that the ALJ improperly uses the RFC to support his finding instead of citing to the

11 record to highlight any alleged discrepancies.  Id. at 8.

12        1.   Relevant Law

13      The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

14 symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ

15 must determine whether the claimant has presented objective medical evidence of an underlying

16 impairment which could reasonably be expected to produce the pain or other symptoms

17 alleged."  Id. (internal quotation marks and citation omitted).  The claimant, however, need not

18 prove that the impairment reasonably could be expected to produce the alleged degree of pain

19 or other symptoms; the claimant need only prove that the impairment reasonably could be

20 expected to produce some degree of pain or other symptom.  Id.  If the claimant satisfies the

21 first element and there is no evidence of malingering, then the ALJ "can [only] reject the

22 claimant's testimony about the severity of her symptoms . . . by offering specific, clear and

23 convincing reasons for doing so."  Id. (internal quotation marks and citation omitted).  "General

24 findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

25 evidence undermines the claimant's complaints."  Reddick, 157 F.3d at 722 (quoting

26 Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently

27 specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's]

28 testimony."  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

22CV1838-W(BLM)

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

As an initial matter, neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; cervicalgia; bilateral knee arthralgia; [and] bilateral shoulder impairment." AR at 20. Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. Id. at 23; see also Lingenfelter, 504 F.3d at 1036; Mot., Oppo. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering. See Mot.; Oppo. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding her symptoms. See Lingenfelter, 504 F.3d at 1036.

The ALJ identified three reasons for discounting Plaintiff's subjective claims that are addressed by the parties. See AR at 22-31. The Court will consider each reason individually.

2.   Activities of Daily Living

One reason the ALJ provided for discounting Plaintiff's subjective symptom testimony was that his "allegations of significant limitations [we]re not borne out in his description of his daily activities." AR at 23.

22CV1838-W(BLM)

In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms.  See Thomas, 278 F.3d at 958–59 (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997)).  While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to her specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.1999).; Thomas, 278 F.3d at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day." Id. at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch, 400 F.3d at 680–81; Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

The ALJ properly considered Plaintiff's daily activities.  Here, Plaintiff testified that he had to stop working because he has difficulty remembering things and has physical issues with his back, knees, elbows, wrists, and arthritis in his hands.  AR at 52- 53.  Specifically, Plaintiff testified that he uses a CPAP every night and a cane as needed (not prescribed) [id. at 54], has never been hospitalized for psychiatric issues [id. at 55], has not undergone any surgeries that have prevented him from working [id. at 54], spends nine to ten hours a day on his patio reading and researching [id. at 56],  used to bike a lot but has been unable to do so for quite some time due to knee and back issues [id.], can drive, but that sitting in the car can be painful and, for example, when he drove from San Diego to the Bay area in August of 2021, it took him several days because he needed to be able to stop and rest due to back pain [id. at 61], suffers from hallucinations [id. at 59], has intense nightmares that result in him falling out of bed and

22CV1838-W(BLM)

breaking things [id. at 60], is high strung and has anger issues [id.] and needs to shift positions frequently to reduce pain [id.].   Plaintiff also testified that without the help of his wife and caregiver, he would be at risk of missing meals and medications, and of letting his hygiene deteriorate.  Id. at 61-62.  In his Adult Function Report Plaintiff stated that he does not prepare his own meals, pay bills, or perform any household chores.  Id. at 26, 256.

The ALJ considered Plaintiff's testimony regarding his pain and limitations [id. at 23-26], but he also considered Plaintiff's (1) July 20, 2021 Exertional Activity Questionnaire wherein Plaintiff reported that he can walk up and down a flight of stairs, pick up items two feet or more off the ground, carry a twenty pound box for fifty feet twice before resting, (2) December 14, 2021 report to his doctor that he was able to bike thirty miles at least once a week, (3) December 15, 2021 report to his doctor that he was exercising with his bike despite his knee pain (4) July 20, 2021 treatment notes that stated Plaintiff was biking in the Bay area along with Plaintiff's testimony that he was not biking to the Bay area and only used stationary bikes[6], (5) April 29, 2021 report that his typical day involved getting up at 4:00 a.m., watching the stock market on CNBC, taking a nap, going to the gym, listening to the radio, eating dinner, and relaxing, (6) July 2020 Adult Function Report stating that Plaintiff can drive, count change, handle a savings account, use a checkbook, video chat, and text, (7) January 19, 2021 treatment notes where Plaintiff reported enjoying retirement and spending time investing in the stock market and biking, and (8) April 26, 2021 treatment notes where he described his activity level by stating that he frequently exercised in the gym and rode his bike.   Id. at 23, 25-26 (citing Exhs. 9E at 1-4, 10F at 8, 12, 13, 38, 4E at 4-6, 6F at 38, 57-58).  The ALJ also considered the VA's April 5, 2022 determination that Plaintiff did not meet the eligibility criteria for PCFAC because Plaintiff was found to be relatively independent in his activities of daily living.  Id. at 26 (citing Exh. 13F

---

[6] While there is some ambiguity as to how long Plaintiff continued to bike, whether that was stationary biking or outdoor biking, the ALJ is responsible for resolving any such ambiguities and the Court must defer to the ALJ's findings.  Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).  Given the numerous treatment records where Plaintiff stated that he was still riding, there was substantial evidence supporting the ALJ's consideration of that activity despite Plaintiff's denials at the hearing.

22CV1838-W(BLM)

1  at 49).

2      The ALJ found that the limitations Plaintiff described were inconsistent with the activities

3  Plaintiff described and undermined by Plaintiff's VA records.  Id.  "When the evidence before the

4  ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's

5  conclusion."  Batson, 359 F.3d at 1198 (quoting Andrews, 53 F.3d at 1041).  The Court finds

6  that the ALJ rationally concluded that Plaintiff's testimony regarding his activities of daily living

7  were inconsistent with the level of functioning Plaintiff alleged and that conclusion is supported

8  by substantial evidence.

9      Accordingly, Plaintiff's activities of daily living are a clear and convincing reason to

10  discount Plaintiff's subjective testimony and claims.

11          3.   Course of Treatment

12      A second reason provided by the ALJ for discounting Plaintiff's subjective symptom

13  testimony is Plaintiff's conservative course of treatment.  AR at 24, 26.

14      Plaintiff does not address the specific reasons the ALJ provided for his credibility analysis,

15  and instead, only argues that generally, the ALJ "put the cart before the horse" by determining

16  Plaintiff's RFC first then improperly evaluating Plaintiff's testimony in light of that RFC.  Mot. at

17  18.

18      In addition to finding that Plaintiff's subjective testimony was inconsistent with his

19  activities of daily living, the ALJ found that the testimony was made less credible due to the

20  conservative nature of Plaintiff's course of treatment.  AR at 24, 26.  The ALJ noted that the

21  Plaintiff did not receive the type of medical treatment one normally would expect for a totally

22  disabled individual and that since Plaintiff's alleged disability onset date, Plaintiff's treatment has

23  "reflected a conservative approach."  Id. at 26.  Specifically, Plaintiff has been (1) taking Motrin

24  and seeing a chiropractor and physical therapist for his back pain [see id. at 24], (2) treating his

25  neck pain with chiropractic and physical therapy [see id.], (3) attending physical therapy for his

26  shoulder pain [see id.], and (4) taking Motrin for knee pain [see id. at 25].  The ALJ noted that

27  Plaintiff has been taking his medication as prescribed and that the objective medical evidence

28  showed that the medications were effective in controlling Plaintiff's symptoms and that Plaintiff

did not allege that there were any negative side effects from the medication.  Id. at 26.

The ALJ supported his conclusion that the medical treatments were relatively effective with respect to Plaintiff's back by noting that although Plaintiff has a history of chronic back pain that is made worse when Plaintiff sits, stands, or bends for a prolonged period, his reported range of motion of flexion after physical therapy was 90% of normal and extension was 80% of normal.  Id. at 23-24 (citing Exhs. 2F, 3F, 4F, 8F, 9F, 12F, 13F).

The ALJ supported his conclusion that the medical treatments were relatively effective with respect to Plaintiff's neck by noting that although Plaintiff still complained of severe neck pain in August 2021, his measures showed improvement including that he only had mild difficulty with neck mobility and could move his neck 76 to 95% of normal[7], he had mild difficulty with neck mobility related to driving and could view 76 to 95% of traffic[8], his cervical left rotation improved from 46 degrees to 51 degrees, cervical right rotation improved from 53 to 57 degrees of rotation, and cervical side bending declined from 26 to 21 degrees, he only had mild segmental mobility deficit with his cervical spine and moderate segmental mobility with his upper thoracic.  Id. at 24 (citing Exh. 7F at 2).  Finally, Plaintiff had 4/5 strength in his deep neck flexors, improved from 3+/5 and no impairment or pain with active cervical flexion and active cervical extension.[9]  Id. (Citing Exh. 7F at 3).  The ALJ also noted that Plaintiff had some restricted range of motion of the cervical spine in all planes and marked narrowing of the C5-6 and C6-7 intervertebral disc spaces with marked degenerative changes in the fact joint.  Id. (citing Ehxs. 2F and 8F).

The ALJ supported his conclusion that the medical treatments were relatively effective with respect to Plaintiff's shoulder by noting that in October 2020, there were no joint

---

[7] Previously, his neck mobility was noted as moderate difficulty with neck movement that was 51 to 75% of normal.  AR at 682.

[8] Previously, his neck mobility related to driving was noted as moderate difficulty with neck movement that was 51 to 75% of normal.  AR at 682.

[9] Previously Plaintiff had a mild impairment with pain at the end ranges of active cervical flexion and moderate impairment with pain during mild ranges of active cervical extension.  AR at 683.

22CV1838-W(BLM)

deformities, heat, erythema, asymmetry, tenderness, swelling, or inflammation and Plaintiff's range of motion was intact with flexion, abduction, external rotation, and internal rotation within normal limits, in February 2021, Plaintiff's range of motion of flexion was 90% of normal and of extension was 80% of normal, on August 30, 2021, Plaintiff's range of motion was grossly normal bilaterally, and that by August 2021, Plaintiff had "no impairment of shoulder flexion to 170 degrees." Id. at 24-25 (citing Exhs. 4F at 12 and 7F at 3).

The ALJ supported his conclusion that the medical treatments were relatively effective with respect to Plaintiff's knee by noting that although Plaintiff had a history of knee pain, he had normal examinations with a normal range of motion, normal gait, and normal posture. Id. at 25 (citing Ehxs. 2F, 8F, 10F, 11F, 13F, and 14F). Plaintiff also was neurologically intact and able to ambulate without an assistive device. Id.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-751 (9th Cir. 2007) (citation omitted) (finding that treatment with over-the-counter pain medication was conservative treatment). Claims of a lack of improvement may be rejected by pointing to clear and convincing evidence that directly undermines them, such as evidence that a claimant's symptoms improved with the use of medication. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff does not challenge the ALJ's conclusion that the nature of his treatment and his progress and improvement detracted from the credibility of his subjective symptom testimony. Mot. The Court finds that this is an additional valid reason provided by the ALJ for discounting Plaintiff's subjective symptom testimony and that it is supported by substantial evidence and, therefore, constitutes an additional clear and convincing reason for discounting Plaintiff's testimony.

### 4.   Inconsistencies With The Objective Medical Evidence

A final reason provided by the ALJ for discounting Plaintiff's subjective symptom testimony is that the medical evidence does not substantiate the additional restrictions that Plaintiff claims are necessary. AR at 23.

22CV1838-W(BLM)

Plaintiff again does not argue that this specific reason for discounting Plaintiff's testimony is incorrect, and instead, generally argues that the ALJ "put the cart before the horse" by determining Plaintiff's RFC first then improperly evaluating Plaintiff's testimony in light of that RFC.  Mot. at 17.

Inconsistencies with the objective medical evidence cannot be the sole reason provided by an ALJ for discounting a Plaintiff's credibility.  "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of ... testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'"  Ondracek v. Comm'r of Soc. Sec., 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)); see also Rollins v. Massanari, , 857 (9th Cir. 2001), 261 F.3d at 857 (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); Burch, 400 F.3d at 680 ("an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"); Light, 119 F.3d at 792 ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); SSR 16–3p (S.S.A. Oct. 25, 2017) (stating that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

The ALJ recognized Plaintiff's complaints of depression, anxiety, gout, back, knee, elbow, and hand pain, and memory problems and noted various diagnosis confirming shoulder arthralgia, mild AC joint osteoarthritis, multilevel degenerative disc disease, facet arthropathy, and osteochondral defect lateral patellar facet and chondromalacia of the lateral patellar facet. AR at 22.  The ALJ then listed examples of objective medical evidence that he felt did not substantiate additional restrictions.  Id. at 23.  Specifically, the ALJ noted Plaintiff's (1) February 2021 90% range of motion of flexion and 80% range of motion of extension in his shoulder, (2) lack of tenderness, swelling, joint deformities, heat, erythema in his shoulder, (3) negative drop

22CV1838-W(BLM)

sign, impingement test, and giving away sign of the bilateral shoulders, (4) normal knee examinations with a normal range of motion, a lack of swelling, crepitus, effusion, joint deformity, and instability, and negative McMurray's, Lachman's, and Patellar tests, (5) normal gait, (6) lack of severe mental impairment findings in October 6, 2020, March 8, 2021, and July 13, 2021, and (7) improved neck mobility with pain.   Id. at 23-27 (citing Ehxs. 4F at 12, 7F at 2-3, 2F at 4-5, 8F at 5-6, 2A, and 4A).

Even if the ALJ improperly found that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence, any such error would be harmless.  Here, the ALJ provided two reasons separate from the objective medical evidence for discounting Plaintiff's subjective claims that were supported by substantial evidence.  Accordingly, an error in the ALJ's evaluation of the objective medical evidence in relation to Plaintiff's symptom testimony is harmless.

### 5.   Cart Before the Horse Argument

While Plaintiff is correct that the ALJ states that Plaintiff's treatment and symptoms support the finding of some limitations as stated in the RCF, but not the additional restrictions as alleged by Plaintiff, the use of this wording alone does not create reversible error.  See Laborin, 867 F.3d at 1155 ("[l]ike our sister circuits, we have stated that inclusion of this flawed boilerplate language is not, by itself, reversible error and can be harmless").  Plaintiff cites Laborin in support of his position that the ALJ improperly put the cart before the horse when evaluating Plaintiff's symptom testimony, however, Laborin is consistent with the instant matter. In Laborin, the Court noted that the boilerplate language used by the ALJ did not add anything to the ALJ's determination regarding the plaintiff's credibility or the RFC and found that "[t]o discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'"  Id.  Here, the Court has found that the ALJ has done just that.  The ALJ generally identified Plaintiff's testimony regarding back,

22CV1838-W(BLM)

neck, shoulder, and knee pain and the related limitations and found it to be less than fully credible. AR at 23-26. The ALJ specifically identified Plaintiff's testimony regarding his functioning and identified Plaintiff's VA records as undermining that testimony. Id. at 26. The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony; Plaintiff's activities of daily living and the conservative nature of Plaintiff's treatment. AR at 23-26. The ALJ's finding, therefore, was consistent with Laborin and does not represent a situation where the ALJ improperly put the cart before the horse.

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS DENYING** Plaintiff's Brief and **AFFIRMING** the decision of the Commissioner.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **October 27, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 10, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Sanchez v. Seibel, 830 Fed. Appx. 943 (9th Cir. 2020) (citing Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998) (holding that failure to object to a magistrate judge's recommendation waives all objections to the magistrate judge's findings of fact but does not ordinarily waive objections to purely legal conclusions)).

**IT IS SO ORDERED.**

Dated: 10/6/2023

Hon. Barbara L. Major
United States Magistrate Judge

22CV1838-W(BLM)